## Account of G. M. Tustin, Assignee of The Catawissa Deposit Bank. Appeal of G. M. Tustin from Confirmation of Auditor's Report.

*Assignment for benefit of creditors—Compensation to assignee.*

The circumstances that will justify an allowance of commissions to an assignee in excess of 5 per cent must be such as show an unusual amount of labor. Extraordinary labor is the basis on which a claim for extraordinary compensation must rest.

*Allowance of fee paid for suretyship.*

Where it was apparently contemplated on the acceptance of the trust that an assignee for the benefit of creditors should be allowed to charge the price paid by him to a trust company for becoming his surety, he will be entitled to credit for the same in his account, and an expression of his opinion or belief that the expense of settling the estate would not exceed 5 per cent should not deprive him thereof.

Argued April 14, 1896. Appeal, No. 163, Jan. T., 1896, by G. M. Tustin, assignee of the Catawissa Deposit Bank, from the decree of C. P. Columbia Co., dismissing exceptions to report of auditor, surcharging said assignee. Before Sterrett, C. J., Green, Williams, McCollum and Mitchell, JJ. Modified.

Exceptions to auditor's report.

The Catawissa Deposit Bank, an institution organized under a special act of the legislature, to do a deposit and discount business, made an assignment to wind up its affairs by reason of the expiration of its charter, May 19, 1891. G. M. Tustin, the appellant, was chosen assignee. He had been the cashier of the bank since 1884.

Prior to the assignment, the bank had collected all of its available assets, and paid off its depositors and other indebtedness except a very inconsiderable amount.

The assets assigned consisted of past due defaulted notes, past due judgments, defaulted agreements upon real estate, farm property and other real estate, overdrafts, some cash, aggregating the appraised amount of $39,467.47; together with several other past due and defaulted claims, to which no valuation was attached.

Before entering upon the duties of the trust, Mr. Tustin gave bond in the sum of $78,900 with the Guarantee Trust & Safe Deposit Company of the city of Philadelphia, as his surety. The expense of this suretyship was 1 per cent of the amount coming into the hands of the assignee, and amounted to $418.26.

Independently of collections made on account of crops and rents from real estate, the assets collected constituted one hundred and seven items. The assignee had the oversight of tenants on a farm; he made about eighteen separate collections on account of crops marketed by him, and he made about twenty-five different payments on account of repairs, taxes, etc. He endeavored to make sale of the real estate, sending out letters to the fifty-two shareholders and others, upon two separate occasions, and visiting them. He finally procured an order of court and attended the sale. He had occasion to visit the farm and other real estate which demanded his attention.

He brought but few suits;—but successfully defended a litigated case in court.

The total amount of funds received, disbursed and accounted for by the assignee was $41,673.98, which consisted of cash, assets due on overdrafts, about forty notes of the appraised value of $15,000, seven judgments aggregating about $7,000, two mortgages, some bridge stock and $5,000 worth of real estate, independently of collections made on account of crops and rents from real estate.

Whenever he succeeded in getting $10,000 in hand, he made application to court for permission to pay the same to shareholders. This was upon three separate occasions; and $30,000 were paid out to the shareholders under the direction of the court, a compliance with which added to the labor and time of the assignee.

He succeeded in collecting over $3,000 of the unappraised assets.

To all uncollected assets he bestowed great attention; and was required to go to Philadelphia at least three times, Harrisburg twice and twice to Williamsport.

The attention thus given extended over a period of two years and a quarter, and the execution of the trust was in every way commendable.

The assignee filed an account wherein he charged himself with $41,825.72, collected and received by him, and took credit among other things with the sum of $3,555.18 for his compensation for services, etc., which included also the $418.26 paid by him to the surety company.

The account was excepted to by Mrs. Jane Eyer and Mrs. E. Kostenbauder, two of the shareholders, and the appellees; the material exception being as to the amount claimed for compensation by the assignee.

The account was referred to J. H. Maize, Esq., as auditor to report upon the exceptions, and to make distribution to the parties entitled.

The auditor made his report wherein he reluctantly surcharged the assignee with the sum of $625.10 and reported a distribution. By this reduction the assignee had the equivalent of 6 per cent for compensation, and the 1 per cent he paid the surety company on the fund received. Exceptions were filed to the auditor's report upon the part of the appellant and by the appellees. There were no specific exceptions to any of the auditor's findings of fact.

The court, in an opinion, made an order as of December 2, 1895, dismissing the exceptions as filed by the assignee, and sustaining the exceptions on the part of the shareholders, and referred the report back to the auditor to make an amended distribution by reducing the compensation to 5 per cent on the amount of cash administered; and afterwards on December 4, 1895, the court made another order that the accountant's commission, with the expense of suretyship included, shall not exceed 5 per cent on the general fund, and made further order, whereby the assignee was allowed only the equivalent of 4 per cent of the fund received for his compensation, and the 1 per cent he had paid the surety company.

The auditor then made a second report, in accordance with the instructions of the court, and surcharged the accountant with the sum of $1,471.49.

In discussing the question of compensation the auditor cited: Brewster's Practice, p. 404; sec. 4451; Heckert's App., 24 Pa. 486; Duval's App., 38 Pa. 112; Armstrong's Est., 6 Watts, 236; Wharton's Est., 1 W. N. 318; Kauffman's App., 9 Cent. 737; Davis' App., 100 Pa. 201; Perkin's App., 108 Pa. 314; Cox's Est., 5 W. N. 474; Harbster's App., 125 Pa. 1; Biddle's App., 3 W. N. 396; Gilpin's Est., 138 Pa. 143; Clark's Est., 11 Phila. 53; King's Est., 11 Phila. 26; Marsteller's App., 4 Watts, 267; Wister's Est., 6 Phila. 55.

To this second report of the auditor, the appellant filed an exception, complaining of the surcharge of $1,471.49.

On December 26, 1895, the court made an order dismissing the exception, and confirming the report of the auditor.

An appeal was then taken to this court, because of the action of the court below in reducing the compensation of this trustee.

*Error assigned*, among others, was decree that the accountant's commission, with that of suretyship included, shall not exceed 5 per cent of the general fund.

*James Scarlet*, with him *Robt. R. Little*, for appellant.

*W. H. Rhawn*, with him *Grant Herring* and *C. A. Small*, for appellees.

OPINION BY MR. JUSTICE WILLIAMS, July 15, 1896:

The general rule regulating the allowance of commissions to an accountant was correctly stated by the learned judge of the court below. The circumstances that will justify an allowance in excess of 5 per cent must be such as show an unusual amount of labor. The evidence in this case made it very clear that the accountant exercised intelligent attention and the utmost good faith in the discharge of the duties he assumed by accepting the position of assignee; but his principals were entitled to this. The faithful discharge of a duty affords no claim for an extra allowance. Extraordinary labor is the basis on which a claim for extraordinary compensation must rest, and we agree with

VOL. CLXXVI—25

the learned judge in the opinion that the labors of the account-
ant, while they were efficient, faithful and successful, were not
extraordinary in their proportion to the fund raised and dis-
tributed.   The rate of commission allowed was, we think, a fair
one under all the circumstances and we are not disposed to dis-
turb it.

The only point on which we are inclined to differ from the
learned judge is in regard to the expense incurred in procuring
the Guarantee Trust & Safe Deposit Company of the city of
Philadelphia to become surety for the accountant upon his offi-
cial bond.   The auditor found in his ninth finding of fact that
" This item of expense and charge was agreed to be deducted as
such by virtue of the deed of assignment, and the understand-
ing of the parties ; " and in his nineteenth finding, that so much
of the testimony of S. D. Rinard and J. H. Vastine as was
against this view of the arrangement between the parties was
the result of a mistake on their part.

The learned judge in reviewing the auditor's report held dis-
tinctly that " it is further found that the preponderance of evi-
dence justified the auditor in finding the fact that it was
consented to, and agreed that the expenses of such suretyship
should be deducted from the general fund ; " but he sets against
this his own finding that there was a contract between the par-
ties that, including this item, " the whole expense attending the
settlement of the estate by the assignee should not exceed 5
per cent."   We agree with the auditor that the evidence, taking
it most strongly against the assignee, does not show a contract
such as the learned judge held to exist.   It shows at most only
the expression of an opinion or belief that the expenses of clos-
ing up the affairs of the deposit bank would not exceed 5 per
cent.   All that was insisted on was an expression of opinion by
him as to the probable expense.   He expressed the opinion that
it would exceed 3 per cent, but would not exceed 5.   We do
not see that he was asked to guarantee the correctness of his
estimate, or that his selection was conditioned upon his payment
out of his own pocket of all expenses in excess of it.   He should
be allowed, under the findings we have referred to, the amount
actually paid to secure the execution of his bond by the Phila-
delphia company, and with this modification the decree appealed
from is affirmed.   No order is made in regard to the costs of
this appeal.