## Kline's Estate.

*Auditors—Findings of fact—Counsel fees—Commissions—Executors and administrators.*

1. An auditor's findings of fact based upon oral and documentary evidence that certain counsel fees which an administrator had allowed to be taken from the estate were excessive will not be reversed by the appellate court where the findings were confirmed by the orphans' court and there was no manifest error.

2. Where an administrator charges himself with the whole amount of a fund received by him after litigation, and takes credit for the fees retained by the attorneys, and it is made to appear that such fees were excessive, he will be liable to surcharge for the excess, especially where it is shown that he made no objection to the fees retained, and made no investigation as to their appropriateness.

3. An allowance of more than five per cent commissions to an administrator on an estate of $3,600 will not be permitted unless there was an unusual amount of labor.

Argued Oct. 26, 1911. Appeal, No. 120, Oct. T., 1911, by Arthur B. Bewley, Administrator of William B. Tompkins, deceased, who was administrator of the Estate of Martha J. Kline, deceased, from decree of O. C. Blair Co., Dec. T., 1910, No. 73, dismissing exceptions to adjudication in Estate of Martha J. Kline, deceased. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ. Affirmed.

Exceptions to report of Charles Geesey, Esq.

The facts appear by the opinion of the Superior Court.

*Errors assigned* were in dismissing exceptions to auditor's report.

*James Gay Gordon,* with him *J. S. Black, Thomas H. Greevy* and *E. G. Brotherlin,* for appellant.—The administrator cannot be surcharged with money which never came into his possession unless he has been guilty of gross negligence: Calhoun's Est., 6 Watts, 185; Webb's App.,

165 Pa. 330; Chambersburg Saving Fund Assn.'s App., 76 Pa. 203; Schilskey's Est., 12 Pa. Dist. Rep. 181; Hemphill's Est., 19 Pa. Dist. Rep. 606.

The attorneys had a lien upon the fund for their compensation and had a right to retain the same out of moneys collected: Balsbaugh v. Frazer, 19 Pa. 95; Seybert v. Salem Twp., 22 Pa. Superior Ct. 459; Quakertown & Eastern R. R. Co. v. Guarantors' Liability Ind. Co., 206 Pa. 350.

This fund was really created by counsel: Walters's Est., 19 Pa. Dist. Rep. 293.

*George M. Meyers* and *H. A. Davis*, with them *Samuel J. Houston* and *A. V. Dively*, for appellees.—The burden is on accountant to show that the sum paid for the services and advice of counsel is reasonably necessary and proper, and fully warranted by the nature and character of the professional services rendered: Mutchmore's Est., 9 Pa. Dist. Rep. 293; Heffner's Est., 134 Pa. 436; McCann's Est., 11 Pa. Dist. Rep. 244.

Findings of fact of an auditor will not be reversed, except for clear error: Hayes's Est., 23 Pa. Superior Ct. 570; Union Traction Co. v. Grubb, 24 Pa. Superior Ct. 345; Powel's Est., 208 Pa. 505; Kern's Est., 18 Pa. Superior Ct. 506.

OPINION BY RICE, P. J., March 1, 1912:

Martha J. Kline, the decedent, filed a bill in equity, in the court of common pleas of Blair county, against John G. Kline, her husband, and obtained a decree in her favor for the payment of $2,000, together with interest for a period of years. Some years later, in the settlement of the estate of John G. Kline, deceased, in York county, an amicable arrangement was entered into whereby there was awarded to her estate, in settlement of this claim and interest, the sum of $3,330.75. After some delay this was paid to the attorney in York county to whom the claim had been sent. He deducted for the legal services

in York county, $838.65, and remitted to the attorney who had obtained the decree in Blair county and who had been instrumental in having him employed to represent the estate of Martha J. Kline in York county, one-half of these fees. He also remitted to him, as attorney for the administrator of Martha J. Kline, $2,408.65, the balance of the amount collected. The latter attorney deducted from that sum $1,000 for the services rendered by him "in establishing the decree and judgment in equity," and paid the balance, $1,498.05, to the administrator. In his account filed in Blair county the administrator charged himself with $3,619.52, in which was included the item, "amount paid at York, Pa., $3,330.75," and claimed credit for the two items above alluded to ($838.65 and $1,000), for an item of $300 as compensation for his own services, and for another item of $100 paid his local attorney for services rendered him as administrator. These items, aggregating $2,238 for attorneys' fees and administrator's commissions, consumed sixty-one per cent of the entire estate, and, taken with some other credit items aggregating $266.47, left for distribution $1,114.40. If there be deducted from this balance the further sum of $270, the costs and expenses of the audit, there will be left for distribution to the children of Martha J. Kline the sum of $844.40. Such result, however disappointing it might be to them, might not, of itself, compel, nor even justify, the conclusion that the credits claimed by the accountant were improper or excessive; but it did invite and require very careful scrutiny of them by the administrator and by the orphans' court, and the same duty devolves on this court. The auditor who was appointed to pass upon the exceptions to the account and make distribution, reduced the first mentioned item from $838.65 to $300, the second from $1,000 to $500, and the third from $300 to $180, that being five per cent of $3,619.52, the entire fund for which the accountant charged himself. All of the other credits were allowed, and none of them is brought in question on this appeal

by the administrator from the decree of the orphans' court approving and confirming absolutely the report of the auditor.

As to the first mentioned item, the auditor found that there were not such services rendered as would warrant the payment of $838.65. We will not recite the evidence as to the extent and character of the services for which this sum was charged. It is enough to say that the evidence as to that matter, taken in connection with the great preponderance of opinion evidence given by members of the bar, warranted the auditor's finding and his reduction of the credit to $300.

As to the second item, the auditor found that the preponderance of the testimony showed that the attorney intended to charge only $500 for services rendered the decedent in her lifetime. This finding is supported by the fact that after the decree in equity the attorney filed in that case an assignment to himself of $500 "of the sum of money adjudged and decreed. . . . I having been attorney for the said Martha J. Kline in the above stated case, said sum of $500 being the amount due me for professional services therein." Further, two of the daughters of the decedent testified that after her death the attorney said to them "that he was to get $500 if he obtained a judgment; he didn't mention how much the judgment was to be." Still further, the attorney for the defendant in the equity suit testified, in substance, that at the termination of that suit he and the attorney for the plaintiff decided, upon consultation, that a fee of $500 for each would be fair and reasonable. The executor of the estate of John G. Kline also testified that the attorney told him, during the negotiations in settlement of that estate, that he was going to charge $500 for the equity suit. The attorney admits that he told Martha J. Kline that he was going to charge her $500 for his services, but testified that she said, in reply, "It was satisfactory if he would charge her one-half." Passing the objection to the competency of the witness to testify as to a contract between

him and the decedent, the objection remains that this testimony did not establish a contract to pay him one-half of the sum recovered, nor overthrow the effect of his own act in fixing his fee at $500. As bearing upon the question of the attorney's good faith, it is due to him to call attention to his testimony to the effect that he originally fixed the fee at $500, without examining the decree carefully, thus overlooking the fact that it carried interest on the $2,000 for a considerable period. He says: "I never knew that instead of recovering $2,000 I had got $3,900. Judge BELL had dated the interest back thirteen years and therefore when I collected the claim I made my fee $1,000, which I think is reasonable." We have given due consideration to this testimony, but we think it insufficient, in view of the meagerness of the testimony as to the services rendered in obtaining the decree, to overcome the presumption that the fee originally fixed by the attorney was commensurate to those services.

With regard to the third item, the auditor reported: "The main portion of this estate is derived from one item, namely, the amount received by the administrator from the settlement of the John G. Kline estate in York county. The items of credit are the usual ones in any ordinary account, and there is no service which would warrant the administrator in charging more than what might be termed the regular or fixed fees in a personal estate, to wit, five per centum. The auditor therefore feels it his duty to say that $180 would have been a correct, reasonable and proper fee for the administrator in this account; and he therefore surcharges the administrator with the sum of $120." After an examination of the account and the evidence, we are unable to say this conclusion was incorrect. In Wistar's Estate, 192 Pa. 289, there will be found collected in the brief of appellee's counsel a large number of cases relating to commissions of accountants, and a review of these and other cases will show, as Justice MITCHELL said, that there is no set rule as to percentage on the estate. "The rule is for compensation for

the amount and character of the labor." Undoubtedly, cases have arisen, and will arise, where, comparing the smallness of the estate with the amount and character of the labor, five per cent would be inadequate compensation. But it is safe to say with regard to an estate of this size, as was said in Tustin's Account, 176 Pa. 382, that "the circumstances that will justify an allowance in excess of 5 per centum must be such as show an unusual amount of labor." No such circumstances are shown in this case.

With regard to all these items it is to be observed that the auditor, having all the facts and circumstances before him, fixed what he deemed fair compensation for the attorneys and the accountant, and that the court, upon review of his findings, approved them. These findings involved the determination of questions of fact depending upon both oral and documentary evidence; and the rule is well settled that, in such cases, the findings will not be overruled on appeal, except for manifest error. We are unable to conclude that there was such error.

But it is argued that, although the findings of fact relative to the attorneys' fees would not be overturned if the issue were between the attorneys and the administrator, yet, in determining whether the administrator should be surcharged with the excess of fees retained by them, the principle should be observed that an administrator is not liable beyond what he actually receives, unless in case of gross negligence; and that when he acts as others do with their own goods and with good faith, and is not guilty of gross negligence, he is not liable. We have not overlooked this principle, nor do we find any evidence in the case reflecting on the administrator's honesty. But it is to be noticed that he charged himself with the whole amount and took credit for the fees retained by the attorneys, as if he had actually paid them. In view of the way in which he has stated his account, we cannot see that the case is different from what it would be if he had actually received the whole amount and then paid the

fees. He presents the case in that way, and there is nothing to require us to look at it differently. For it is to be observed further, that there is no evidence whatever that he made any objection to the retention of these fees, or, indeed, that he made any investigation as to their appropriateness. When we consider the gross discrepancy between the amount which he permitted to be retained and the amount which the auditor and court have found to be reasonable and adequate, it is difficult to avoid the conclusion that he did not exercise ordinary care and diligence. Indeed, we have no hesitation in saying that, in view of all of the facts and circumstances involved in the findings of the auditor and court, the administrator was guilty of that degree of negligence which fully warranted the decree made.

A motion was made to quash the appeal because of the defectiveness of the assignments of error. We, however, permitted amended assignments of error to be filed at bar, and have considered the case upon the merits as thereby presented; and now formally overrule the motion to quash.

All of the assignments of error are overruled, and the decree is affirmed at the costs of the appellant.